**KAISER et al. v. UNITED STATES.**

No. 9318.

Circuit Court of Appeals, Eighth Circuit.

July 19, 1932.

Rehearing Denied Sept. 7, 1932.

William Anderson, of St. Paul, Minn. (A. M. Cary, of Minneapolis, Minn., on the brief), for appellants.

Robert V. Rensch, Asst. U. S. Atty., of St. Paul, Minn. (Lewis L. Drill, U. S. Atty., of St. Paul, Minn., on the brief), for the United States.

Before STONE and KENYON, Circuit Judges, and OTIS, District Judge.

KENYON, Circuit Judge.

Appellants, who will be herein designated as defendants, were convicted of unlawfully transporting some forty gallons of intoxicating liquor. Defendant Kaiser was sentenced to two years in the penitentiary and defendant McCormick to two and one-half years.

Four points are argued under the assignments of error and relied on for reversal, viz.: (1) Error of the court in overruling the motion to suppress certain evidence secured by the prohibition agents in a search of the automobile in which it was being transported; (2) error in admitting as a part of the government's case the motion including verified petition of defendant McCormick to suppress evidence claimed to have been secured in violation of his constitutional rights; (3) error in the court's refusal to give a requested instruction in behalf of Kaiser as to the effect of admissions made by McCormick; (4) error in refusing to give a requested instruction as to Kaiser being a casual employee.

The last two alleged errors relate only to the case of defendant Kaiser.

The first point raises the question of an alleged unlawful search of an automobile traveling upon a highway resulting in finding forty gallons of intoxicating liquor therein. Defendant McCormick moved to suppress this evidence as secured by unlawful search and seizure in violation of the Fourth and Fifth Amendments to the Federal Constitution. No motion was made on behalf of Kaiser. The law relating to search of automobiles supposed to be transporting intoxicating liquors has been clarified and settled by a number of decisions of the Supreme Court of the United States. The substance of the whole matter is summed up in Husty et al. v. United States, 282 U. S. 694, 700–701, 51 S. Ct. 240, 241, 75 L. Ed. 629, 74 A. L. R. 1407, as follows: "The Fourth Amendment does not prohibit the search, without warrant, of an automobile, for liquor illegally transported or possessed, if the search is upon probable cause; and arrest for the transportation or possession need not precede the search. * * * We think the testimony which we have summarized is ample to establish the lawfulness of the present search. To show probable cause it is not necessary that the arresting officer should have had before him legal evidence of the suspected illegal act. * * * It is enough if the apparent facts which have come to his attention are sufficient, in the circumstances, to lead a reasonably discreet and prudent man to believe that liquor is illegally possessed in the automobile to be searched."

See, also, Dumbra v. United States, 268 U. S. 435, 45 S. Ct. 546, 69 L. Ed. 1032; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Wida v. United States (C. C. A.) 52 F.(2d) 424.

The question of whether the search and seizure was lawful depends upon whether there was probable cause for a reasonably discreet and prudent man to believe that liquor was being transported unlawfully in the automobile driven by McCormick. The trial court upon a hearing on the motion decided there was such probable cause, and denied the motion to suppress. The only witness testifying on this hearing was the federal prohibition agent, Nelson, stationed at

Detroit Lakes, Minn. He also with other witnesses testified at the trial. The facts developed in the hearing on the motion and in the trial are these: Nelson, a federal prohibition agent, assisted by prohibition agents Harney and Robbins, made the arrest of both defendants on the night of April 2, 1931, on a county road near what was known as the Gorder farm about seven miles northeast of Moorhead, Minn. Nelson had been conducting investigations concerning these two defendants for some months. He testified: "I had information that the McCormick residence at 303 11th St., North, in Moorhead was used as an office for the taking of orders for loads of alcohol, or for quantities,—that the orders were accepted there and then it was delivered,—and that the Gorder Farm Northeast of Moorhead was used as a storage plant for the alcohol belonging to McCormick and Kaiser."

And, when asked, "What was the nature of the information which you had with reference to how the cars proceeded?" he answered: "The information was that the cars traveling from the McCormick residence 'in Moorhead and going North on Highway No. 6, would at night, turn off their headlights before they turned East on the County Road towards the Gorder farm."

Previous to the time of the arrest he had made two observations along the highway between the McCormick home and the Gorder farm in the nature of checking on automobiles. On one of these occasions the car he was observing turned off the lights as it turned east toward the Gorder farm. His information was that the persons using the Gorder farm and the McCormick residence in connection with the sale and transportation of liquor were defendants McCormick and Kaiser; that the usual procedure was for cars to leave the McCormick residence, drive out on highway No. 6 to the junction of the county road leading to the Gorder farm, and his information was that when they reached this point, the lights of the car were extinguished, and his observations prior to the time of the arrest showed the accuracy of the information he had received. On the night of the arrest he observed a Ford car drive up in front of the McCormick residence in Moorhead where it remained for five or ten minutes. During that time a man left the car. Two men left the McCormick residence and entered this car. Nelson followed in his car, accompanied by the other agents, Harney and Robbins. He testified the tail-light on the Ford car was unusually bright, and from the time the car left the McCormick home until it turned east on the county road he did not lose sight of it. When this Ford car which they were following turned off highway No. 6 on to the county road, it turned its lights off. Nelson went along on the state highway about a mile and doubled back to the county road, where he turned off his lights and went east toward the Gorder farm. For a period of ten or fifteen minutes he had lost sight of the taillights on the Ford car. While on the road opposite the Gorder farm he saw the lights as they were turned on the car in the farm yard, and noticed the same peculiar light on the car which they had noticed on the car they were following, which turned into the road leading to the Gorder farm. They waited near the entrance to the farmyard, and, when the lights of the Ford car turned toward the Nelson car, Nelson turned on the lights. The other car stopped, started forward, stopped again, then in reverse speed backed up, and the Nelson car followed it. When this car again stopped, the three agents got out of the Nelson car and went to the car which was being driven by McCormick with Kaiser at his side. Before any arrest or search was made, they asked what was in the car, and were told by McCormick that the car contained alcohol. They then arrested McCormick and Kaiser, searched the car, and found forty gallons of alcohol in the rear section. Kaiser did not give his correct name to the officers. At the time of the trial, Harney, who had not testified in the hearing on the motion, stated, "But as I got a little closer to the car, or right next to it, I could smell alcohol."

Defendants cite a number of cases where it was held that the evidence was not sufficient to show probable cause for search or seizure of an automobile, and undoubtedly there are many such cases. It seems to us that the circumstances disclosed in the evidence given at the time of the hearing on the motion would lead a reasonably discreet and prudent man to believe that the operators of the car were in the illegal possession of liquor in the automobile, and that is the test of probable cause. There was certainly reasonable ground to stop the car and make inquiry, and, when inquiry was made, McCormick admitted there was alcohol in the car. The officers then had reason to believe that a felony was being committed in their presence, and therefore had the right to arrest defendants and make the search and seizure of the liquor. In Nelson v. United States, 18 F.(2d) 522, 524, this court said: "In view of the testimony in this record, we do

not feel justified in saying that the lower court erred in denying the motion to suppress the evidence. The officers acted upon the defendant's reputation as a law violator, his suspicious conduct, the unusual hour of the day he was out, and their knowledge of his previous conviction for a similar offense, etc. We are not permitted to substitute our judgment for that of either the officers or the lower court, as long as we find no abuse of the measure of discretion that they must necessarily be allowed to exercise. There is nothing to show that the officers were actuated by any other motive than a proper performance of their duty." And in Wida v. United States, 52 F.(2d) 424, 426, which was a case concerning the search of a residence, this court said: "We hold: (1) That where officers have reasonable information that a felony is being committed at a certain place they are justified in making a proper investigation at that place to ascertain whether such information is correct; (2) that if, while on such premises for that purpose, they are apprised by their senses that the felony in question is then being committed in their presence, they have a right to arrest the suspected person for the commission of that felony; (3) that as an incident to such arrest, they have the right at the time to make a search of the immediate premises for other evidence of the commission of that felony. * * *" There was no error in denying the motion to suppress the evidence.

◼ The second point argued is as to the admissibility in evidence of Exhibit B. This is the petition of McCormick to suppress the evidence secured in the search of the automobile driven by McCormick. In this it is stated "that the said prohibition agents took possession of said Ford Coach and made a search thereof and took therefrom forty gallons of alcohol without his permission or consent." Here was an admission that the automobile he was driving contained alcohol. When the exhibit was offered in evidence, counsel for defendants objected to it as incompetent, irrelevant, and immaterial. The court said: "It may be admitted in evidence, and you may have an exception. It is understood that this is received in evidence only as to the defendant McCormick." It is now urged that the admission of the exhibit was error, for two reasons: (a) That the same was privileged, and (b) that the admission was in violation of the Fifth Amendment to the Constitution of the United States, in that it compelled McCormick to be a witness against himself. He did not testify at the trial. The claim that this was privileged

seems too frivolous to be discussed. It was a court record, open to any one for perusal. Any newspaper could have published it. There was no element of privilege in it.

◼ As to the other proposition that he was compelled by this procedure to testify against himself, we are at a loss to understand just what the compulsion was. The statement was voluntarily made, signed, and sworn to before one of his own attorneys, so there was no compulsion about that. The government did not compel him to make the statement. The only admission there is in Exhibit B is that alcohol was found in the car which was being driven by McCormick. It does not state he is the owner of the alcohol. All of the witnesses, including Kaiser, testified that McCormick was driving the car, and as it is unquestioned that alcohol was found therein, there could be no possible prejudice in the admission of Exhibit B, if its admission was erroneous. We think, however, it was admissible.

The other two alleged errors urged do not affect the defendant McCormick, but are applicable to the case of Kaiser.

◼ Point 3 argued relates to the requested instruction for defendant Kaiser, as follows: "That if you members of the jury, after considering all the testimony in the case, are satisfied beyond a reasonable doubt that the defendant Thomas W. McCormick made certain admissions against his interest, that such admissions shall in no way be considered by you as evidence against the defendant Frank N. Kaiser."

This instruction did not refer to any particular claimed admissions made by McCormick against his interest, but was sort of a general sweeping instruction to cover all admissions. The testimony as to statements in the nature of admissions made by McCormick is as follows: Agent Nelson testified: "Upon approaching the Ford car, we informed the defendants that we were Government Agents, and at that time Agent Harney asked defendant McCormick what he had in the car, and after some hesitation McCormick stated alcohol. * * * After finding the alcohol I personally questioned the defendants while we were on the highway. Mr. McCormick stated the alcohol belonged to him."

He testified that at the McCormick residence at Moorhead after the arrest "I asked McCormick if it was not a fact that the alcohol belonged to both Kaiser and McCormick. He, McCormick, stated, 'You know it does.' I then asked Kaiser if that was correct and Mr. Kaiser stated 'It does not.'"

When this evidence was offered the following took place:

"Mr. Anderson: 'As I understand it, and so the record may be clear—any admission made by the defendant McCormick cannot be considered as an admission as to the defendant Kaiser.'

"Mr. Rensch: 'I am only offering it against defendant McCormick.'

"Mr. Anderson: 'I would have no objection to the testimony going in with that understanding.' "

Agent Harney testified that he asked McCormick how much alcohol he had in the car, and he said "forty gallons," and that: "I heard Nelson ask the defendants who owned the alcohol and McCormick answered 'it belongs to us' and then changed and said 'to me,' and then Mr. Nelson spoke to Kaiser directly and asked him what he had to do with it, or words to that effect, and he, Kaiser, said 'I was just helping Ollie out.' "

Harney asked McCormick where he got the liquor, and he stated he had it "planted in a ditch back there a little way." Agent Robbins testified as to the conversation between Nelson and Harney and defendants, McCormick and Kaiser, in front of the McCormick residence in Moorhead after the arrest, as follows: "At that time Agent Nelson asked McCormick 'if he and Kaiser were not in this together,' and McCormick replied 'that it belonged to them (Kaiser and McCormick)', and then Mr. Kaiser spoke up and said 'he did not have anything to do with it.' Then afterwards McCormick changed his statement and said, 'it was his alcohol.' "

No objection was made to the admission of any of this evidence except the conversation at the McCormick home after the arrest, the proceedings concerning which we have heretofore referred to, and which show that the evidence was offered only as to McCormick and was not to be considered as an admission as to Kaiser. Counsel had no objection to this testimony going in with that understanding, and of course it is apparent that such was the understanding of counsel and of the court. No motion was made to strike out any of this evidence. The court was careful in the trial whenever a suggestion was made as to the relationship of statements of McCormick to Kaiser to properly limit the testimony, as is apparent from the statement of the court upon admitting Exhibit B. We do not think the argument made here by counsel as to these admissions was ever fairly presented to the trial court. The language of the requested instruction does not in any way refer to the particular statements of McCormick now urged as admissions by him prejudicial to Kaiser. The request did not present clearly to the court the question on which counsel for appellants now seems to rely. There is no objection anywhere to the statements of McCormick to the agents (except the one referred to at the McCormick residence in Moorhead) which would call such testimony to the attention of the court. Counsel for the government concede that admissions of McCormick would not be competent against Kaiser, but urge that they were not admitted against him, and that the jury must have so understood it. Under the situation here appearing, we do not think there was any error in the Court's refusal to give the requested instruction even had it been properly framed. The statements of counsel for defendants and the prosecution as to admissions made by McCormick, not being considered as admissions as to Kaiser, amounted to an agreement that such evidence was admitted only as to McCormick. While it might have been advisable to have given an instruction on the subject, it was not error under the record to refuse so to do. Further, there would seem to be no prejudice resulting from these alleged admissions. For instance, when McCormick made the statement that "the alcohol belongs to us," and when Kaiser denied having any interest therein, McCormick changed his statement, and said, "The alcohol belongs to me." Whenever Kaiser denied McCormick's statements McCormick seems to have absolved Kaiser from blame. It would seem the alleged admissions of McCormick in so far as they might be against his interest added nothing to the case as against Kaiser.

The fourth point urged is error in the refusal of the court to give at the request of defendant Kaiser this instruction: "That if, after considering all the testimony in this case, you are satisfied beyond a reasonable doubt that the defendant Frank N. Kaiser only assisted in the transportation of the alcohol as charged in the indictment as a casual employee of the defendant Thomas W. McCormick, I instruct you to return a verdict of not guilty in his behalf."

There was a discussion concerning this request at the close of the court's instructions as follows:

"Mr. Anderson: I wish to have an exception to the failure of the court to charge as requested Number one and two of the requested instructions,—the first and second were denied and exception is taken.

"The Court: Well, you will not need to go into that. There is no evidence that either one of these parties was an employee of the other,—if I thought there was, that would have been included in the charge.

"Mr. Sletvoldt: My recollection of the testimony on that point is the fact that the government men,—at least two of them, testified that the statement was that he assisted Mr. McCormick.

"The Court: That was denied in the charge because I do not think there is any evidence that either one was in the employ of the other."

The court was entirely justified in this statement. There is no evidence from which a jury would be authorized to find any employment of Kaiser by McCormick. Kaiser made no claim that he was a casual employee, but testified that he was not an employee of McCormick, and, further, that he had nothing to do with the loading of the alcohol. It is true that Nelson testified to the effect that Kaiser stated to him at the time of the arrest that he had only assisted McCormick in loading the alcohol in the farmyard, but this does not in any way show that he was an employee, and this statement was denied by Kaiser when he testified. There was no reason whatever as we view it for giving this instruction. We are satisfied that none of the points urged by defendants warrant a reversal of this case as to either one.

The judgment of the trial court is affirmed.