No. 21140

RAYMOND CASIAS AND STEVE O. CASIAS *v.* THE PEOPLE
OF THE STATE OF COLORADO
(415 P.2d 344)

Decided June 6, 1966. Rehearing denied June 27, 1966.

154

CHARLES S. VIGIL, for plaintiffs in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JAMES W. CREAMER, JR., Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

STEVE AND RAYMOND CASIAS were convicted of possessing, and of conspiring to possess, "a narcotic drug, namely, Dilaudid." On this writ of error they maintain that the trial court committed reversible error in a number of its rulings. Although not distinctly delineated, we believe that whatever errors are attempted to be asserted are dealt with in this opinion.

On May 9, 1962, several members of the Denver Police Department and of the United States Bureau of Narcotics stopped the automobile operated by Raymond,

and in which Steve was the passenger. The Denver police had been notified by federal agents that the brothers Casias were on their way back to Denver from Colorado Springs, and the interception of the automobile resulted from a police "stakeout."

A warrant for the arrest of Steve had been issued for escape from the Denver County Jail, and a warrant for the arrest of Raymond had been issued for driving with a suspended operator's license. After stopping the automobile and informing the defendants that they were under arrest, a search of their persons was made. A hypodermic needle and an eyedropper were found in Steve's shirt pocket. A "fire-blackened" spoon and cotton wrapped in a newspaper were lying on the front seat of the automobile. Both the eyedropper and the spoon were observed by the police to contain a "whitish liquid" residue which subsequent chemical analysis revealed to be dilaudid, a derivative of opium.

Defendants urge that the trial court erred in denying their motion to suppress the evidence on the ground that it was obtained in violation of the fundamental constitutional proscription against unreasonable searches and seizures. With this contention we do not agree.

We have held that the person is subject to reasonable search, after a valid arrest, in order to see if he is armed. *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236; *United States v. Rabinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. If contraband or articles the possession of which is illegal are discovered during the course of an otherwise reasonable search, the police are not required to refrain from seizing that material under the penalty that if they do seize it, it cannot be admitted in evidence. *Hernandez v. People,* 153 Colo. 316, 385 P.2d 996; *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.

It is undisputed that in this case valid warrants for the arrest of the Casias brothers had been issued and the police were, therefore, justified in stopping

the automobile in which they were riding in order to effect their arrest. The needle and eyedropper were discovered pursuant to the legally sanctioned search of the person of Steve, and the spoon and cotton in the newspaper pursuant to the search of the car. The articles seized contained a "whitish liquid" residue, as mentioned above, and the experience of the arresting officers, some of whom specialized in narcotics cases, made it reasonable for them to assume that the residue on the paraphernalia here in question was, in fact, narcotic. The searches and seizures of the articles were reasonable under these circumstances and the applicable law, and no error was committed by the trial court in denying the motion to suppress.

It is next contended that a plea of former jeopardy as to Steve was improperly denied. Steve had been tried and convicted in Superior Court on a charge of being a disorderly person, the charge arising from the same arrest and involving in part the same evidence as that introduced in the instant proceeding. That Steve was *addicted* to narcotics formed the basis of such conviction, addiction being designated "disorderly conduct" under the ordinance. We note that the only authority cited in defendants' brief on this feature of the case is a quotation from a case dealing with a plea of autrefois acquit, obviously distinguishable in that Steve was *convicted* in Superior Court. See *Harris v. State,* 193 Ga. 109, 17 S.E.2d 573, 147 A.L.R. 980, for a lucid and penetrating discussion of the doctrines of former jeopardy, autrefois acquit, and res judicata.

 The Constitution of Colorado, Article II, Section 18, prohibits placing a person in jeopardy twice for the "same offense." In the case at bar, two distinct offenses are involved, one grounded on addiction and the other on possession. An individual may illegally possess narcotics without being an addict, and an individual may be addicted and subject to legal sanctions without being in possession of narcotics at the same point in time.

158

Since two separate offenses are involved here, the plea of former jeopardy was properly denied. See *Hill v. Best,* 101 Colo. 243, 72 P.2d 471; 22 C.J.S., *Criminal Law,* Sec. 278 (1).

Defendants cite as error the fact that two terms of court elapsed from the term within which the information was filed to the time when they were brought to trial, in violation of C.R.S. 1963, 39-7-12. But the controlling test is fixed by Rule 48 (b), Colo. R. Crim. P., which permits trial within one year from the filing of the information. And the defendants were tried before the lapse of the year.

The one year provision sets up a maximum limitation beyond which a defendant shall not be tried for the offense charged, provided the delay was not occasioned by his "action" or "request." We should not be understood as stating that, simply because a trial is held within one year, the defendant is precluded from raising his right to a speedy public trial as embodied in the Constitution of Colorado, Article II, Section 16. A speedy public trial is a relative concept in that the circumstances of each case determine whether it has been afforded. Fundamentally, this is a judicial question. *Medina v. People,* 154 Colo. 14, 387 P.2d 733, cert. den. 379 U.S. 848, 85 S.Ct. 88, 13 L.Ed. 33; *Jordan v. People,* 155 Colo. 224, 393 P.2d 745. See also, 34 Rocky Mtn. L. Rev. 1, 97.

The brothers Casias had the burden of proving that an expeditious trial was denied them. *Jordan v. People, supra.* This burden they failed to meet, and we will not *presume* that they were in any wise prejudiced, or that the delay here was arbitrary or oppressive.

Defendants next urge that the evidence was insufficient to sustain either charge. They say that there is no evidence "of a physical nature" of the illegal possession of narcotics, and that evidence of conspiracy is totally lacking.

It appears that, subsequent to the hearing

on the motion to suppress and prior to trial, the evidence seized from the Casias brothers mysteriously disappeared. That the People were unable at the trial to produce this evidence goes only to the relative strength of their case. Various witnesses testified as to the articles seized and to the narcotic nature of the residue on the articles. Instruments used in the commission of a crime need not necessarily be produced at the trial in order to make admissible the testimony of the witness who saw and is able to describe them to the fact finder. *State v. Davis*, 74 W.Va. 657, 82 S.E. 525.

██ Similar reasoning applies to the contention that the People's case must fail since they did not introduce into evidence the testing material in which the residue was dissolved in order to ascertain whether it was narcotic. Testimony of an expert is not rendered inadmissible merely because it relates to a small quantity of material which was consumed in the chemical analysis made to ascertain what the material is. *Corens v. State*, 185 Md. 561, 45 A.2d 340.

██ It is argued that the narcotic substance was of such minute quantity that the conviction cannot stand. This proposition was answered by this court in *Duran v. People*, 145 Colo. 563, 360 P.2d 132, wherein we held that "the statute denounces the possession of *any amount of the drug*, even 50 milligrams." (Emphasis supplied.)

██ With regard to the argument concerning an alleged lack of evidence to sustain the conspiracy conviction, the following quotation from *Medina v. People, supra*, is controlling:

"Conspiracy is generally covert and consequently must be established in most cases by circumstantial evidence. A common design is the essence of a conspiracy and must be proved, and such proof may be fashioned from evidence other than that the parties came together and actually agreed upon a method of operation for the accomplishment of an offense. . . ."

See also, *Heald v. United States*, 175 F.2d 878. Our review of the record convinces us that there was sufficient evidence to submit the charge of conspiracy to the jury.

Error is assigned to the action of the trial court in excluding Raymond from the courtroom during the hearing on the motion to suppress the evidence. The record discloses that defendants' counsel first requested that all witnesses be excluded from the courtroom and that the district attorney then requested that "the other defendant" (Raymond) be removed also. The following then occurred:

"Mr. Vigil: I think that Raymond Casias being the other defendant is entitled to stay in the courtroom.

"Mr. Alexander: You are trying the motion as to both defendants and the basis of your motion may be different as to each defendant and consequently since you have invoked the rules of exclusion, the only person you can keep in the courtroom is the defendant.

"Mr. Vigil: That is correct and these are joint defendants that have not been separated by trial and I think they are both entitled to stay in the courtroom.

"The Court: This goes as to the issue of this motion?

"Mr. Vigil: That is right.

"The Court: Well, it is entirely possible that this issue might be different as to the two defendants and I think on this issue then the exclusion should apply."

Defense counsel at no time attempted to clarify his position as to whether the evidence and issues relative to the search and seizure might be different with respect to Raymond and to Steve, and it was not until hearing had been had that it was apparent that they were similar. Under such circumstances, the defense cannot now be heard to complain.

Amazingly enough, it is next contended that since the defendants were denied counsel in another case, the present conviction should be reversed. We, of course, do not know whether this allegation in the

brief is true, since there is nothing in the record in this case to support it. It is obviously irrelevant to the case at bar!

During their case in chief, the People called to the stand the court reporter who had taken down the proceedings that had occurred on the motion to suppress the evidence. He was permitted to read into the record part of Steve's testimony at the hearing on the motion, which testimony concerned the taking from him of the hypodermic needle and the eyedropper by the police. Error is assigned to this procedure.

█ Even in the federal courts, which, it must be conceded, still operate under more stringent rules than most state courts, the cases do not support the defendants' contention. It has repeatedly been held that where the motion to suppress has been properly denied (*i.e.*, where the search and seizure is reasonable), it is not error to introduce at the trial the motion, affidavits supporting the motion, and the testimony of the defendant at the hearing on the motion as admissions against interest. See *Vaught v. United States*, 7 F.2d 370; *Heller v. United States*, 57 F.2d 627, cert. denied, 286 U.S. 567, 52 S.Ct. 647, 76 L.Ed. 1298; *Kaiser v. United States*, 60 F.2d 410, cert. denied, 287 U.S. 654, 53 S.Ct. 118, 77 L.Ed. 565; *Fowler v. United States*, 239 F.2d 93; *Monroe v. United States*, 320 F.2d 277, cert. denied, 375 U.S. 991, 84 S.Ct. 630, 11 L.Ed.2d 478; *United States v. Taylor*, 326 F.2d 277, cert. denied, 377 U.S. 931, 84 S. Ct. 1332, 12 L.Ed.2d 295.

We are not disposed to articulate a rule different from that followed in the federal courts, as indicated by the cases cited above, especially since our own circuit is included in the line of cases establishing the rule. See *Fowler v. United States, supra.*

██ It is claimed that the press gave undue publicity to certain hearings had in the trial court to determine what had happened to the missing evidence and

that, as a result, the defendants did not receive a fair trial. There is not one iota of evidence in the record from which this court could determine whether counsel's bald statement concerning publicity in his brief is true. It is fundamental that this court — or any court — does not settle legal questions on the naked factual assertions of counsel.

 It is argued that the defendants were "branded" before the jury because, as defense counsel puts it, "Raymond Casias was constantly followed and kept within arm's reach by two officers, one who was fully armed in Court and dressed in uniform, and the other officer was obviously in charge of the defendant, Raymond Casias." Typical of defense counsel's approach on this writ of error, we are cited to a folio when he moved for a mistrial on the same ground and in substantially the same language as used in his brief before this court and recited above. This motion was made after the People had rested their case. The defense put on no evidence.

Even if we were to hold that the motion was timely, and properly gave the trial court a chance to act, the record is completely silent on this matter save for counsel's own statement in making his motion, and what prejudice, if any, resulted to the defendants from this procedure is pure speculation. We do not overturn convictions attacked by such arguments.

 It is contended that error was committed when Detective Scherwitz testified that he placed Steve under arrest on the strength of the warrant that had been issued for escape from the county jail. This testimony was relevant and material to the People's case as explanatory of the circumstances under which the automobile was stopped and the brothers Casias placed under arrest. In any event, defense counsel made no objection nor did he move to strike this testimony at trial.

Asserted errors relating to the refusal to give ten-

dered instructions have been reviewed and have been found to be without merit.

The judgment is affirmed.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE PRINGLE concur.