No. 21802.

Robert Levil Andrews, a/k/a James Alonza Daniel, a/k/a Robert Levie Andrews *v.* The People of the State of Colorado.

(423 P.2d 322)

Decided February 6, 1967.

Robert Dunlap, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Robert C. Miller, Assistant, for defendant in error.

*En Banc.*

Per Curiam.

Plaintiff in error, hereinafter referred to as the defendant, was convicted of forgery in the El Paso District Court. The information charged the defendant with wilfully and falsely making and forging a certain

instrument with intent to cheat and defraud The First National Bank of Colorado Springs and the B and B Upholstery, Inc.; and that he falsely uttered and/or passed to the J. C. Penney Co. as true and genuine the false and forged instrument with intent to defraud the J. C. Penney Co., the B and B Upholstery, Inc. and The First National Bank. The language of the information follows C.R.S. 1963, 40-6-1. Trial to a jury was begun on November 24, 1964, and the jury returned a verdict of guilty the following day. The defendant was sentenced to the Colorado State Prison and from this judgment has brought writ of error.

A summary of the evidence indicates that the defendant entered the J. C. Penney Store in Colorado Springs to buy a pair of shoes costing $9.17, for which he offered a check in the amount of $47.53. This was a printed form of check on the account of "B and B Upholstery," a local business which was closed but still had an account at The First National Bank. The payee was "James Alonzo Daniel"; it was purportedly signed for the drawer by "Charles R. Anderson," with an endorsement on the reverse side of "James A. Daniel." The salesman lacked authority to accept the check, and when he left the shoe department to present it to his superior for approval, the defendant departed from the store without the shoes, without the check and without any money. After comparing a sample of the defendant's handwriting with the check, a handwriting expert testified that the defendant had written the date, the payee, the amount, and the drawer's signature on the check in question. It was established that neither the defendant nor a Charles R. Anderson were authorized to sign checks on the B and B Upholstery, Inc. account at The First National Bank. A deputy sheriff, Mr. Littrell, testified that the defendant admitted to him his true name, Robert L. Andrews, the execution of the check, its endorsement, and its presentation at the J. C. Penney Store. The defendant made an offer of proof that the

bank would not have paid the check on an unauthorized signature and, therefore, no loss would have resulted to the bank or to the account on which the check was written. The trial court refused to admit this evidence.

The alleged errors are enumerated and described below.

## I.

■ The defendant claims that the requirements of Rule 7 of the Colorado Rules of Criminal Procedure have not been complied with in that the affidavit attached to the information does not name the defendant. *Coy v. People*, 158 Colo. 437, 407 P.2d 345, disposes of this argument advanced by the defendant.

## II.

■ Defendant contends that his alleged oral confession appearing in evidence through the testimony of Mr. Littrell, a deputy sheriff, was improperly admitted. This is the most critical point raised by the defendant and he relies primarily upon the case of *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977. The date of defendant's trial brings him within the *Escobedo* rules (*i.e.*, cases in which trial began after June 22, 1964); however, the defendant does not fall within the rules of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694, decided June 13, 1966, and determined to be applicable only to cases in which trial began after June 13, 1966 (*Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L. Ed.2d 882, decided by the United States Supreme Court, June 20, 1966).

■ *Escobedo* is limited, insofar as this state is concerned, to the fact situation appearing in that case.

■ A review of the circumstances under which this defendant was questioned indicates that this defendant had not employed an attorney and that there was no affirmative denial of his right to counsel as there was in *Escobedo*. On the other hand, he was clearly advised of his right to counsel and his right to remain silent and was informed that statements he might make could be

used against him as evidence. These circumstances are not the same as those in *Escobedo*.

The United States Supreme Court further stated in *Escobedo*:

"We hold, therefore, that where, as here, (1) the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, (2) the suspect has been taken into police custody, (3) the police carry out a process of interrogations that lends itself to eliciting incriminating statements, (4) the suspect has requested and been denied an opportunity to consult with his lawyer, and (5) the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution * * *" (Enumeration supplied.)

Applying the above tests, we believe that this defendant is within the ambit of tests numbered one, two and three; but that he does not come within the compass of test number four nor test number five.

Defendant was arrested on another charge on the evening of August 19, 1964. He was advised of his rights and questioned briefly at that time. On the morning of August 20, two members of the Colorado Springs police department interviewed the defendant. At this time Deputy Sheriff Littrell was also present. Mr. Littrell had been notified by the police that they were holding a man whose name was given as James Alonza Daniel, and since the Sheriff had in his possession, for investigation, a check made out to a person by this name and endorsed with the same name, he was interested in the interview. Before this interview began the defendant was again advised of his rights by the police: that he need not answer any question that might incriminate him; that his answers could be used against him in a trial; that he was entitled to counsel at that time if he wanted counsel; and that he was entitled to

call an attorney. Mr. Littrell testified, out of the presence of the jury, that the defendant did not request an attorney. The defendant testified, however, that he did request an attorney and concluded there was no use asking for an attorney since he indicated he did not have any money with which to employ counsel. The defendant testified he was then locked up again after a policeman stated, "Well, you might as well lock him up because he is not going to cooperate."

On the following day, August 21, the deputy sheriff interviewed the defendant who had now been removed to the county jail. The defendant was again advised of his rights and was asked this question before the court, sitting without a jury: "And did you on that day remember that you had been advised prior to that time about your rights?," to which the defendant replied, "Well, I have always known of this right." Subsequently, it developed that the defendant had been convicted of a felony on two previous occasions in Florida, and had some first-hand experience with interrogation and his rights connected therewith. The defendant was twenty-one years old and had the equivalent of a high school education.

■ There were, of course, some conflicts in the evidence, but we cannot hold that on the record here the trial court, in resolving these conflicts, erred as a matter of law in finding that defendant's statement was admissible.

We conclude that the trial court properly admitted evidence of statements made by the defendant.

### III.

■ Defendant alleges he was improperly charged with two offenses in a single count of the information and requested the trial court to require the People to elect which offense they would prosecute. The trial court held, and we think properly, that while different acts were alleged in the information, collectively they described a single offense, namely, forgery. The crime

defined is a single one and the statute describes different ways in which the offense may be committed. The transactions are connected and related to each other in such a way as to constitute one offense and, therefore, may be alleged in one count of an information. The several acts of this defendant are but "successive stages in the progress of a criminal enterprise, constituting as a whole only one offense, although either when done alone might be an offense." *Marrs v. People*, 135 Colo. 458, 462, 312 P.2d 505. The evidence in this case indicates that the defendant became alarmed and left the store before receiving any merchandise or cash in exchange for the counterfeit check, but the crime had been committed when he knowingly made, uttered or passed such a check.

## IV.

█ It is also contended as error that the information named the wrong parties intended to be defrauded in that the signature shown on the forged check was not one which the bank would have honored, and that the bank would have reimbursed itself from the account of the B and B Upholstery, Inc. Therefore, the defendant contends, only the J. C. Penney store could suffer a loss, which they did not. However, there is evidence of clear intent to defraud the J. C. Penney Co., and such allegation is included in the information.

█ Also, the evidence shows that had the bank paid out cash on a forgery, the bank would have sustained this loss. The instrument which the defendant created was therefore one which could accomplish fraud and under appropriate circumstances might well have succeeded. Accordingly, we hold that the information was sufficient in this respect, and the offer of proof was properly rejected.

The judgment is affirmed.

Mr. Justice McWilliams not participating.