No. 22195.

RICHARD JOSEPH LUCERO *v.* THE PEOPLE OF THE
STATE OF COLORADO.

(465 P.2d 504)

Decided February 24, 1970.

HARRY H. HADDOCK, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, AUREL M. KELLY, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THE defendant, Richard Joseph Lucero, was charged and convicted of aggravated robbery and conspiracy to commit robbery for which he was sentenced to concurrent terms in the penitentiary. The convictions are here for review on writ of error.

The defendant alleges numerous errors which he claims entitle him to a new trial, three of which we deem worthy of consideration. In order, they are: (1) Denial of a speedy trial; (2) prejudice resulting from the security measures employed by the sheriff's office during the trial; (3) the admission into evidence of in-custody statements which were not voluntary but which were coerced, and without prior advice as to his constitutional rights.

In the late afternoon of May 3, 1962, two armed men, one with a rifle and one with a revolver, entered the office of St. Anthony's Credit Union; a third man remained outside and served as a "look-out." The individual with the rifle ordered the several employees of the credit union into one room of the two-room office and directed them to lie face down on the floor. Failing to find any cash in the safe, one of the men demanded to know where

the money was kept. An employee responded that it was in the cash drawer and indicated where the cash drawer was located. The drawer was pulled out in such fashion that the contents were emptied on the floor. The robbers gathered up the money and fled.

On May 5, 1962, the defendant was arrested at the home of his parents. Floyd Felix Rose and John Garcia were arrested the same day. All three were identified as participants in the robbery and were so charged. Later that day Detective Brannan, the investigative officer, recovered a revolver, a rifle and a topcoat from a shed at the rear of Rose's grandfather's house. The rifle was identified at the trial by one of the victims as the one used by the defendant during the robbery and the revolver as similar to the one used by the other defendant (Garcia) who entered the credit union office with the defendant. The coat, likewise, was identified as similar to the one worn by the defendant.

On May 8, 1962, the defendant and Rose signed a written statement, which is Exhibit D, admitting their participation in the robbery and implicating Garcia. This statement was received in evidence and is the subject of alleged error (3).

(1) *DENIAL OF A SPEEDY TRIAL.*

The defendant contends that he was deprived of a speedy trial in violation of Colo. R. Crim. P. 48 (b), which provides that:

"* * * If the trial of a defendant is delayed more than one year after the finding of the indictment or filing of the information, unless the delay is occasioned by the action or request of the defendant, the court shall dismiss the indictment or information; * * *."

The defendant in support of this contention states:

"* * * Continuances were always for some reason other than any action or request on the part of the defendant who was under a constant factor of duress because he was on parole from the Colorado State Penitentiary at the time of this alleged aggravated robbery. * * *"

In view of the fact that the information was filed on May 10, 1962, and the trial to which this writ of error was directed did not commence until November 9, 1965, it is necessary to examine the circumstance surrounding this extraordinarily long delay.

Trial was initially set for January 15, 1963. When the matter came on for trial, the defendant's retained attorney stated that he was not ready for trial and specifically waived the two-term rule and the one-year requirement. At this time the district attorney announced that he was ready for trial and that the witnesses were in court. The case was then reset for August 13, 1963. On August 13, defendant's attorney of record asked leave to withdraw, as did the attorney of record for Garcia. After two further hearings in successive weeks, the present attorney for the defendant was appointed by the court to represent both Lucero and Garcia. The case was then set for trial on January 16, 1964.

When the matter came on for trial on January 16, 1964, a Mr. Salazar appeared in behalf of Floyd Felix Rose and requested a continuance in order to prepare for trial. The court had previously appointed present counsel for the defendant to represent Rose. The district attorney objected to the continuance unless agreed to by the defendant. The court permitted the entry of appearance of Mr. Salazar on behalf of Rose and, having previously denied a motion for severance by Mr. Lucero, continued the matter for trial until March 16, 1964. The district attorney and the defendant and his counsel appeared pursuant to the prior trial setting. However, the court again continued the matter, stating:

"* * * [B]ecause this Court is in trial on a case that will take the substantial part of this week, this case cannot come to trial this week; and rather than have all of the attorneys here and so on at this time without any advance notice, the Court felt that the attorneys should be so notified of any inconvenience and the fact that the case could not go to trial at this time. Now, as this Court in-

formed the attorneys both for the Prosecution and for the two defendants, this Court has endeavored through the Judicial Administrator and the Presiding Judge to have another judge try this case this week. As this isn't possible, we have no alternative but to continue this case. * * *"

The district attorney advised the court that his witnesses were present and "that the People are and were ready for trial at that time." Defendant's counsel stated "that the defendants Richard Lucero and John Garcia strenuously object to any delay or continuance and are ready and prepared to go to trial and feel that their rights are being prejudiced and jeopardized by not going to trial at this time."

The court then set the case for trial on June 22, 1964, but, as noted above, it was not tried until November 9, 1965.

A speedy public trial is a relative concept requiring judicial determination on a case by case basis. The one-year provision in Rule 48(b) is conditioned upon the proposition that the delay is not caused "by the action or request" of the defendant. *Casias v. People,* 160 Colo. 152, 415 P.2d 344. Another circumstance to be considered in determining whether the defendant received a speedy trial is the extent of congestion of the docket of the trial court. This court has said that a speedy trial envisions a "public trial consistent with the court's business." *Medina v. People,* 154 Colo. 4, 387 P.2d 733.

On occasions when the case could have been tried, either the defendant or one of his then codefendants requested a postponement. Subsequently, the business of the court was the cause of the delay. At all times the prosecutor had his witnesses present in court and announced that he was ready for trial. Under these circumstances the delay having been initially caused by the defendant he cannot invoke the rule. *Medina v. People, supra; Adargo v. People,* 159 Colo. 321, 411 P.2d 245; *Keller v. People,* 153 Colo. 590, 387 P.2d 421; *Keller v. Tinsley,*

335 F.2d 144. Here, the defendant specifically waived his right to a speedy trial. Also, the defendant has not alleged any prejudice resulting from the long delay and none is apparent from the record other than that which occurs to all litigants, criminal and civil, who have been caught in the vise of excessive backlogs so prevalent in our present-day court system. *Arthur v. People,* 165 Colo. 63, 437 P.2d 41; *Beavers v. Haubert,* 198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950.

(2) *PREJUDICE RESULTING FROM THE SECU-RITY MEASURES EMPLOYED BY THE SHERIFF'S OFFICE DURING THE TRIAL.*

■ The defendant's claim of prejudice is based upon the fact that two uniformed officers were present in the courtroom during the trial. The defendant was serving a term in the state penitentiary at the time of the trial for a conviction on another charge. Prior to trial, defendant, his counsel, the district attorney and representatives of the sheriff's department discussed in detail procedures to be followed in escorting the defendant to and from the courtroom in a manner that would deemphasize to the greatest extent possible that the defendant was in the custody of the sheriff's department. A plan was worked out whereby the defendant with his counsel entered from the area of the judge's chambers rather than through the public entrance to the courtroom. The defendant was dressed in a suit rather than in prison garb and he was not manacled.

The court substantially adopted the procedure requested by counsel for the defendant. To the extent that there was a variance, it was merely to maintain a reasonable degree of security and to permit the sheriff's office to fulfill its responsibility without undue risk of escape or of injury to the public resulting therefrom. The court did not abuse its discretion in the manner in which this phase of the trial was conducted. See, *Montoya v. People,* 141 Colo. 9, 345 P.2d 1062; *Eaddy v. People,* 115 Colo. 488, 174 P.2d 717.

174

### (3) *ERROR PREDICATED ON ALLEGED INVOL-UNTARY IN-CUSTODY CONFESSION.*

The defendant alleges that the trial court erred in admitting statements, both oral and written (Exhibit D), which defendant made to a police officer while in custody following arrest. The error is based upon a denial of Fifth and Sixth Amendment rights under the Constitution of the United States.

The defendant relies primarily on *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; and *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. Both are Sixth Amendment cases dealing with the right to counsel. We do not regard *Massiah* as applicable to the facts of this case.

The defendant also asserts that he was induced to make the statement by a threat of parole revocation, but readily admitted that he was subjected to no threats of physical abuse. The statements which he claims were obtained by coercion could be used both to revoke his parole and to convict him of participation in the robbery. The question thus resolves itself into (1) whether by the application of the tests in Escobedo the defendant was denied his constitutional right to the assistance of counsel, and (2) whether the statements when tested by the traditional rules of voluntariness were admissible. *Jordan v. People,* 161 Colo. 54, 419 P.2d 656; *Downey v. People,* 121 Colo. 307, 215 P.2d 892.

The lapse of time between the statements which were made in May 1962 and the time of trial in November 1965 complicates the legal problem presented by this appeal. During this period the law relating to confessions, search and seizure and the right to representation by counsel was undergoing material changes. The crucial decision, insofar as defendant's Sixth Amendment rights are concerned, is *Escobedo.* It was decided June 22, 1964. The law as it existed at the time of trial, rather than when the statements were made, determines their admissibility.

*Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

We pause to point out that the trial preceded the decision of the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, so, consequently, the *Miranda* tests for admissibility of extra-judicial statements are not applicable. *Johnson v. New Jersey, supra.*

*Escobedo* gave rise to divergent interpretations by both federal and state courts, as to whether it was necessary, in order for the *Escobedo* rationale to come into play, for the suspect to have made a request for counsel, or for him to have been advised of his right to counsel or of his right to remain silent, or for him to have been advised that any statement made by him might be used against him as evidence in a trial. (For discussion and cases answering in affirmative and negative, see Comment Note, 10 A.L.R.3d 1054, at 1057, § 2[b].)

We adhere to the position of those courts which, pre-*Miranda*, hold that the failure to advise a suspect of his constitutional rights does not necessarily and automatically make his statement inadmissible. 10 A.L.R.3d 1054, *supra.* See: *Castro v. People,* 140 Colo. 493, 346 P.2d 1020; *Leick v. People,* 136 Colo. 535, 322 P.2d 674, *cert. denied,* 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366; *Cahill v. People,* 111 Colo. 29, 137 P.2d 673.

In *Andrews v. People,* 161 Colo. 516, 423 P.2d 322, we held that "Escobedo is limited, insofar as this state is concerned, to the fact situation appearing in that case." Also, see *Bean v. People,* 164 Colo. 593, 436 P.2d 678.

A review of the circumstances leading to the oral and written confessions shows many similarities to *Escobedo.* One element — and an important one — in *Escobedo* which is not present here is that defendant had not requested and been denied an opportunity to consult with his lawyer.

The trial court here, as in *Arthur v. People,* 165 Colo.

63, 437 P.2d 41, conducted a hearing outside the presence of the jury to determine whether the confessions of the defendant, both oral and written, were voluntarily made. The court specifically found that they were voluntary and that the application of Escobedo was not fatal to the admission of the statements, because of the absence of the one element noted above.

Unlike *Arthur,* the defendant here asserted that he had requested counsel. The detective who made the arrest and conducted the interrogation denied that such a request was made. There was competent evidence to support the conclusion of the trial court on this point.

The trial court also found that the confessions were not obtained by coercion, threats or force, and were, therefore, voluntary. The record supports the trial court's conclusion.

We are not unmindful of *Nez v. People,* 167 Colo. 23, 445 P.2d 68, which on a somewhat similar fact situation reached a contrary result. In *Nez,* the defendant was a semi-illiterate Indian "with limited understanding of the English language, and ignorant of legal processes and constitutional rights." In the instant case, the trial court, in resolving the issue in favor of admissibility, observed: "Concerning the admissibility of the defendant's oral and written statements, the Court, upon consideration of the testimony presented by the prosecution and by the Defendant at this hearing, and evaluating it in the light of materiality, as well as consideration of the credibility of the witnesses, involving demeanor while testifying, interest in the outcome, and so forth, as well as evaluation of such testimony under existing law, and specifically including therein consideration of authorities in law as cited by Mr. May and Mr. Haddock in their extensive arguments on behalf of their clients, this Court rules that the statement of Defendant made orally on May 7, 1962 and the statement of the Defendant in writing as of May 8, 1962 were freely and voluntarily made spe-

cifically did not violate any of the Constitutional rights of the defendant, and are admissible in evidence." Consequently, under the "totality of the circumstances" here, we conclude that no prejudicial error resulted from the admission of the oral statements and Exhibit D. *Jordan v. People, supra.*

 We conclude that the evidence of the defendant's guilt was sufficient to sustain the jury's verdict and that the defendant was accorded a fair trial.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE GROVES dissent.

MR. JUSTICE PRINGLE not participating.

MR. JUSTICE GROVES dissenting:

None of the continuances, commencing with the one on January 16, 1964, were obtained on the motion of the defendant; rather, they were obtained over his objection. For the court to permit delays in the trial from January 16, 1964, until November 9, 1965 — after there had been earlier continuances for a year — does not meet with my concept of being "consistent with the court's business." Although the court did have a backlog, it still had a duty to give this defendant a speedier trial; and failing to do so, in my opinion, was inconsistent with the proper conduct of the court's business.

MR. JUSTICE DAY joins in this dissent.