**UNITED STATES of America,**
**Appellee,**

v.

**Gerald J. TAYLOR, Clifton A. Hammond, and John W. Butler, Jr., Appellants.**

**No. 8822.**

United States Court of Appeals
Fourth Circuit.

Argued Sept. 25, 1963.

Decided Jan. 10, 1964.

George L. Russell, Jr., Baltimore, Md. (John A. Shorter, Jr., Washington, D. C., on brief), for appellants.

J. Edward Davis, Asst. U. S. Atty. (Joseph D. Tydings, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, BOREMAN and J. SPENCER BELL, Circuit Judges.

HAYNSWORTH, Circuit Judge:

These three codefendants appeal from their conviction of offenses under the Internal Revenue Code relating to gambling. They question the sufficiency of the evidence and challenge the evidentiary use of their admissions in their pretrial motions to suppress evidence. We find no error in either respect.

Revenue agents received information from a source which they had found reliable on previous occasions that Hammond, Taylor and others were operating a lottery out of a house which appeared to be a summer dwelling. They set up a surveillance of the house and on a number of days in succession saw Hammond and Taylor arrive in separate automobiles at the house in the late afternoon and depart sometime thereafter. On each occasion they moved to and from their automobiles bags and packages which appeared to the agents to contain gambling paraphernalia. Hammond was the owner of the automobile he drove, while that in which Taylor came to and fro was registered in the name of the other appellant, Butler.

On the basis of the original information they had received and their own observations, the agents obtained a search warrant which was executed on July 17, 1959. They knocked upon the door and announced their presence. When there was no response, they broke into the house, where, in a front room, they observed Taylor and Butler busily engaged in removing currency from envelopes and stuffing the money in their pockets. The house was not furnished as a residence, but there were telephones, tables and chairs, four adding machines, coin wrappers and records of lottery operations on earlier days. There were a great many lottery slips, some of which bore Butler's initials. Taylor's pockets were found to contain well over $1,000,

while smaller sums were found in the pockets of Butler and Hammond. In Butler's pockets, the agents also found adding machine tapes, pieces of paper with codes and notations, and other gambling paraphernalia.

The agents seized all of the gambling paraphernalia, including the two automobiles.

Before trial, Taylor and Hammond jointly filed a motion to suppress evidence of the articles seized and to return to them "their property." In a following paragraph, they described all of the articles seized in the house except those removed immediately from the persons of the defendants, and, in that paragraph, they referred to themselves as the occupants of the house. In a subsequent paragraph, they described other articles seized immediately from the person of Taylor, and, in still another paragraph, articles seized immediately from Hammond, including his automobile.

In a similar motion, Butler sought the suppression and return to him of the articles removed from his person and of his automobile.

The motions to suppress the evidence seized were denied, and the motions were introduced in evidence at the trial as tending to show that each movant had a proprietary interest in the articles the suppression and return of which he sought.

The defendants do not contest the propriety of the denial of their pretrial motion to supress evidence.

In United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394, the Supreme Court held that the obligation to purchase the special occupational tax stamps did not apply to everyone engaged in the numbers or lottery business. Usually the bets are solicited and made initially by "writers," who turn the record of their bets and the money they have collected over to a "banker" who covers all of the bets received. At times "pick-up men" are employed to pick up money and the memoranda of the bets from the "writers" and take them to the "banker."

In considering this type of operation, the Supreme Court held in Calamaro that the pick-up man was not engaged in accepting wagers within the meaning of the requirement that a special occupational stamp be purchased. The writers were so engaged, as was the banker.

■ Relying upon Calamaro, the defendants first say that the evidence was not sufficient to show that they were not pick-up men or mere clerical employees of an unidentified banker. The contention is without foundation, however. The agents had observed Hammond and Taylor over a considerable period of time, and the observations to which they testified would warrant the inference that Taylor and Hammond jointly were the bankers and not merely clerical employees of some unknown person who never appeared at the banking house. Butler was clearly aiding and abetting the bankers and the articles and paraphernalia removed from his person and the number slips bearing his initials were enough to support an inference that he was also a writer.

■ The District Judge, to whom the case was tried, expressed the opinion that the statements the defendants made in their pretrial motions to suppress showed their proprietary interest in the gambling paraphernalia, and their proprietary interest justified the finding that they were the bankers and not mere pick-up men or clerical employees. With that, we agree. The conclusion is abundantly supported by Merritt v. United States, 6 Cir., 249 F.2d 19, and United States v. Woodson, 6 Cir., 303 F.2d 49, which factually are quite similar to the present case.

Hammond and Taylor say, however, that in their motions they did not allege that the articles seized in the house, other than those from their immediate persons, belonged to them. In the para-

graph in which those articles were listed, they did allege only that they were seized in a house of which they were the occupants, but, in the opening paragraph of the motion, they sought to suppress the use of those articles in evidence and their return to them as "their property." Plainly, the motion does disclose that they claimed a proprietary interest in the articles.

The appellants contend, finally, that they ought to be relieved of their admissions in their motions because of the decision of the United States Supreme Court in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, which came down after their pretrial motions had been filed.

Jones had sought the suppression of a package of marihuana found in an awning outside the window of an apartment of which he was an occupant. Jones was charged with the possession of that marihuana, and proof of its possession was all that was required to convict him. The Supreme Court held that Jones was not required to allege in his motion to suppress that he was the possessor of the marihuana in order to have standing to move for its suppression. Theretofore a defendant, in such circumstances, had been faced with the dilemma of foregoing a motion to suppress or of formally admitting all elements of the crime of which he was charged, knowing that his admission could be used in evidence against him. Merritt v. United States, 6 Cir., 249 F.2d 19; Fowler v. United States, 10 Cir., 239 F.2d 93; Heller v. United States, 7 Cir., 57 F.2d 627; Vaught v. United States, 9 Cir., 7 F.2d 370; United States v. Lindsly, D.C.E.D. La., 7 F.2d 247.

■ The decision of the United States Supreme Court in Jones v. United States, of course, establishes that these defend-

ants would have had standing to move to suppress the evidence without admitting as much as they did, but it does not justify the conclusion that the admission of one who has admitted more than he need have is inadmissible in evidence against him. Admissions which are wholly unnecessary and wholly voluntary regularly are admitted in criminal cases against defendants; indeed, they are the only admissions which are admissible against them. The fact that at the time the defendants may have been under the justifiable impression that they would be without standing to move to suppress unless they did admit ownership does not warrant the conclusion that the admission was involuntary. In all of the cases which uniformly have approved receipt in evidence of such admissions, the admissions have been made in similar efforts to establish standing to move to suppress.

The dilemma in which these defendants found themselves was not so obvious as that in which Jones found himself. Under the earlier rules governing standing, Jones could not move to suppress the evidence without a complete confession of guilt, while, if he failed to move to suppress, the evidence, itself, was enough to convict. Here, in contrast, the admissions were not confessions of guilt. Ownership of automobiles, adding machines and currency is not unlawful. As it eventuated, proof that the defendants had a proprietary interest in the seized articles tended to establish one element of the offense, but, unlike Jones, only one.

Under these rather dissimilar circumstances, we do not think we are required to so extend the holding in Jones as to now relieve these defendants from the consequences of their voluntary admissions.

Affirmed.