**Leslie F. WOODARD, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 22752.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 1, 1969.

Decided June 4, 1970.

Petition for Rehearing Denied
September 17, 1970.

Mr. Lawrence P. Lataif, Washington, D. C. (appointed by this court) for appellant. Mr. William W. Greenhalgh, Washington, D. C. (appointed by this court) was on the brief, for appellant.

Mr. Robert C. Crimmins, Asst. U. S. Atty., of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. Thomas A. Flannery, U. S. Atty., and Roger E. Zuckerman, Asst. U. S. Atty., were on the brief, for appellee. Mr. John A. Terry, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and MacKINNON, Circuit Judge.

MacKINNON, Circuit Judge:

On May 14, 1957, Woodard's prior testimony at a suppression hearing was admitted against him as affirmative evidence of guilt during his trial in which he was found guilty of robbery, interstate transportation of a forged instrument and unauthorized use of a motor vehicle. Upon conviction he was sentenced to imprisonment for a term of two to ten years for robbery and to terms of one to three years on each of the other offenses, all sentences to run concurrently. On appeal to this court he contended his motion to suppress certain incriminating evidence which police had seized at the request of the householder where Woodard was staying as a guest had been improperly denied. We affirmed in Woodard v. United States, 102 U.S. App.D.C. 393, 254 F.2d 312, cert. denied, 357 U.S. 930, 78 S.Ct. 1375, 2 L.Ed.

2d 1372 (1958). All sentences, except that for robbery, have now been fully served.

In 1968 the Supreme Court handed down its decision in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), holding that testimony given by a defendant at his suppression hearing was not admissible against him at trial on the issue of guilt. In 1967, this court had announced the same rule in Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305 (1967) (hereafter *Simmons* and *Bailey*). This appeal arises from a denial of Woodard's motion initiated in March 1967 under 28 U.S.C. § 2255 [1] to vacate and set aside the judgment of conviction in support of which he contends that the decisions in *Simmons* and *Bailey* require retroactive effect. We decide that neither of these decisions are to be given retroactive effect and affirm.

Appellant's original petition to this court to allow his appeal without prepayment of costs was denied. Subsequently

he petitioned for a rehearing *en banc* and we then vacated our previous order, *sua sponte*, and allowed the appellant to proceed in *forma pauperis*. The order allowing the appellant to proceed expressly limited the issue on appeal to whether the principle anounced in *Simmons* and *Bailey* applies retroactively to appellant and, if so, to what extent it affects his conviction and sentence.

The ultimate fact at issue here revolves around certain evidence introduced by the Government in the original trial consisting of admissions made by appellant at a hearing in support of his unsuccessful motion to suppress certain evidence. Appellant made the admissions for the purpose of gaining standing to attack the admissibility of certain evidence which he contended was obtained by an illegal search and seizure. The trial court denied the motion to suppress and later allowed the admissions to be introduced into evidence. We will assume, in this opinion, that the jury could not have returned a verdict of guilty without appellant's admissions.[2]

1. "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there had been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court

shall vacate and set the judgment aside and shall discharge the prisoner or re-sentence him or grant a new trial or correct the sentence as may appear appropriate.

"A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

"The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

"An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

"An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

2. The Government contends there was substantial evidence to convict appellant, even without the admissions.

In *Bailey* we held in 1967 that the defendant's testimony at a suppression hearing could not be used affirmatively against him at trial. Later, in 1968, the Supreme Court handed down a similar decision in *Simmons* where the testimony of one Garrett (a co-defendant) given at his unsuccessful suppression hearing was admitted at trial over his attorney's timely objection. The Supreme Court reversed the conviction reasoning as follows:

> "Thus, in this case Garrett was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." Simmons v. United States, 390 U.S. at 394, 88 S.Ct. at 976.

■ Reading the *Simmons* and *Bailey* cases together, we can see that a defendant in a criminal case, in all instances,[3] has the right to challenge searches and seizures without the fear of having his testimony used affirmatively against him at trial. Assuming the case at bar is one where appellant's own admissions supplied the link necessary to make out a prima facie case for the Government, we come to the question of retroactivity of the decisions.

Retroactivity has long been a topic for studies in jurisprudence and the Supreme Court has had occasion to deal with the question in criminal trials involving constitutional issues. Chief Justice Warren in Johnson v. New Jersey, 384 U.S. 719, 726–727, 86 S.Ct. 1772, 1777, 16 L.Ed.2d 882 (1966), stated:

> " * * * [I]n criminal litigation concerning constitutional claims, 'the Court may in the interest of justice make the rule prospective * * * where the exigencies of the situation require such an application.' "

In later opinions the Court defined the exigencies of the situation as (1) the purpose of the principle under consideration, (2) the extent to which law enforcement personnel may have justifiably relied upon prior law, and (3) the probable impact of the retroactive application upon the administration of criminal justice. Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

## I

The purpose of the *Simmons-Bailey* rule is to protect defendants' Fourth and Fifth Amendment rights at trial and the purposes of the Fourth and Fifth Amendments are to protect individual rights in their persons, houses, papers and effects against invasion and to protect individuals from being compelled to give testimony against themselves. Prior to the announcement of the rule, many decisions had afforded protection to an individual's Fourth Amendment rights separately from his Fifth Amendment rights but it was not until *Simmons* and *Bailey* that the courts eliminated the "Hobson's choice" in suppression hearings that many defendants had faced over the years. It is true that the Supreme Court alluded to the problem in Jones v. United States, 362 U.S. 257, 262, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960), which quoted Judge Learned Hand:

> " 'Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at

3. Prior to *Simmons* and *Bailey*, such right was limited to cases where the crime was one of a possessory nature, *i. e.*, where a defendant had to testify that he was the possessor of certain stolen property in order to establish standing. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma.' Connolly v. Medalie, 2 Cir., 58 F.2d 629, 630."

In 1967 this court delivered its opinion in *Bailey* holding that a defendant could testify at suppression hearings without having such testimony used affirmatively against him at trial. It has a special bearing on this case to note, despite our holding that Bailey's constitutional rights had been infringed, that we did not reverse his conviction because the evidence taken as a whole established that the error was harmless beyond a reasonable doubt. In doing so we stated:

"We do not, however, reverse in this case because, applying the rule of Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), we find beyond a reasonable doubt that appellant Frye was not prejudiced. The only issue at the hearing on his motion to suppress was whether the police had probable cause to make an arrest. In his brief on appeal Frye argues that he would have testified on the question of just when the arrest occurred. * * * Frye could not have been prejudiced since we have found that there was probable cause at the earliest possible time the arrest can in law be said to have been made. * * * If Frye wished to testify as to his non-participation, he should have done so at trial." Bailey v. United States, *supra*, 128 U.S.App. D.C. at 360–361, 389 F.2d at 311–312.

In Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967), Justice Clark said:

"Although our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, this * * * belies any belief that all trial errors which violate the Constitution automatically call for reversal."

*Chapman, supra,* involved the application of the rule as laid down in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), that neither the prosecutor nor the court may make comments on a defendant's failure to testify on his own behalf at trial. The Supreme Court held that the rule laid down in *Griffin, supra,* was not one of those constitutional rights so basic as to make every past violation of it reversible error.

Previously, Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), had also dealt with the question of the retroactivity of the rule laid down in *Griffin, supra,* saying:

"The *Griffin* opinion reasoned that such comment 'is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly.' 380 U.S. at 614 [85 S.Ct. at 1233]." 382 U.S. at 414, 86 S.Ct. at 464.

"[T]he basic purposes that lie behind the privilege against self-incrimination do not relate to protecting the innocent from conviction, but rather to preserving the integrity of a judicial system in which even the guilty are not to be convicted unless the prosecution 'shoulder the entire load.' " 382 U.S. at 415, 86 S.Ct. at 464.

"The basic purpose of a trial is the determination of truth, and it is self-evident that to deny a lawyer's help through the technical intricacies of a criminal trial or to deny a full opportunity to appeal a conviction because the accused is poor is to impede that purpose and to infect a criminal proceeding with the clear danger of convicting the innocent. See Gideon v. Wainwright, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799]; Doughty v. Maxwell, 376 U.S. 202 [84 S.Ct. 702, 11 L.Ed.2d 650]; Griffin v. Illinois, 351 U.S. 12 [2 L.Ed.2d 1269]; Eskridge v. Washington Prison Board, 357 U.S. 214 [78 S.Ct. 1061, 76 S.Ct. 585, 100 L.Ed. 891]. The same can surely be

said of the wrongful use of a coerced confession. See Jackson v. Denno, 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908]; McNerlin v. Denno, 378 U.S. 575 [84 S.Ct. 1933, 12 L.Ed.2d 1041]; Reck v. Pate, 367 U.S. 433 [81 S.Ct. 1541, 6 L.Ed.2d 948]. *By contrast, the Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth. That privilege, like the guarantees of the Fourth Amendment, stands as a protection of quite different constitutional values—values reflecting the concern of our society for the right of each individual to be let alone."* Emphasis added). 382 U.S. at 416, 86 S.Ct. at 465.

The Supreme Court in a number of instances has refused to give a retroactive application to decisions expanding constitutional guarantees. In Chapman v. California, *supra,* which was still pending when *Griffin* was decided, the Supreme Court applied the "harmless error beyond a reasonable doubt" rule to its holding in *Griffin.* In *Tehan, supra,* where the defendant was convicted before *Griffin* was announced, the Supreme Court refused to apply *Griffin* retroactively. In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), a retroactive application for Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) was declined, in Johnson v. New Jersey, *supra,* the Court refused a retroactive application to *Escobedo* and *Miranda,* and in Desist v. United States, *supra,* the decision in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) involving Fourth Amendment rights, was applied prospectively only. These decisions indicate that the purpose of the rule laid down in *Simmons* and *Bailey* is not one the violation of which

is always to be considered prejudicial since the purpose of the constitutional privileges against self-incrimination and unreasonable searches is not to aid in the search for truth.[4] In fact, in many cases where these privileges are asserted they operate to prevent the full truth from being known. Tested by this standard, the purpose of the rule in *Simmons* and *Bailey* does not require retroactive application. Indeed, in holding that *Simmons* need not be applied retroactively, the Second Circuit observed:

"Since the rule is not concerned with the reliability of the defendant's suppression hearing testimony, the integrity and reliability of the fact finding process, which is a fundamental factor influencing retroactivity, is not involved." United States v. Hart, 407 F.2d 1087, 1090 (2d Cir.), cert. denied, 395 U.S. 916, 89 S.Ct. 1766, 23 L.Ed.2d 231 (1969).

II

We next consider the extent to which the Government was justified in relying upon the prior rule of law. One of the critical factors involved in that determination is whether *Simmons* and *Bailey* were "new law" since this goes to the merit of such reliance. Appellant argues that the two cases should not be considered to be new law because he contends they were "foreshadowed"[5] by Jones v. United States, *supra.*

In first considering *Simmons,* we note that case overruled the law in half the federal circuits, to wit: United States v. Taylor, 326 F.2d 277 (4th Cir.), cert. denied, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964); Monroe v. United States, 320 F.2d 277 (5th Cir. 1963), cert. denied, 375 U.S. 991, 84 S.Ct. 630, 11 L.Ed.2d 478 (1964); Fowler v. Unit-

4. When we announced the rule in *Bailey* we applied the *Chapman* harmless error rule which we would not have done if there had been doubt as to the truthfulness of material parts of the testimony.

5. It is not sound to require courts to conform to foreshadowed law in the trial of criminal cases. After all, "foreshadowing" the United States Supreme Court is

not an exact science despite the reference thereto in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), which dealt with closely related issues. At best there are too many indeterminate factors, including the composition of the Court, that would influence any attempt to decide what "new law" the Supreme Court will next decide.

ed States, 239 F.2d 93 (10th Cir. 1956); Kaiser v. United States, 60 F.2d 410 (8th Cir. 1932); Heller v. United States, 57 F.2d 627 (7th Cir. 1932). Furthermore, it is clear that *Bailey* was the first clear statement of the rule in this circuit. *See* Washington v. United States, 100 U.S. App.D.C. 99, 243 F.2d 43, cert. denied, 354 U.S. 914, 77 S.Ct. 1295, 1 L.Ed.2d 1427 (1957).[6]

On the issue here being discussed, appellant's principal contention is that *Simmons* and *Bailey* should be applied with

complete retroactivity because they were both "foreshadowed" by *Jones*. The complete answer to this contention, even if we were to admit that they were so "foreshadowed," is that *Jones* was not decided until March 28, 1960. This was more than 34 months *after* the trial court admitted Woodard's suppression hearing testimony at his trial, and we are not cited to any earlier case so holding. This was also well after appellant had been convicted and his appeal had been denied.[7] Woodard v. United States, *supra*.

---

6. At trial the Assistant United States Attorney orally stated that he was relying upon this case for authority to read appellant's suppression hearing statements to the jury. Washington v. United States, *supra*, was affirmed by order in the Court of Appeals. At the trial of Woodard the original transcript and briefs in *Washington* were presented to the court to prove its holding. The dissenting opinion in attacking the reference to Washington v. United States, 100 U.S.App.D.C. 99, 243 F.2d 43 (1957), in the trial court proceedings incorrectly assumes we are relying on the holding of the case. We are not. That opinion is not important here for the merit of its decision but solely to prove that the Government at the trial in 1957 relied upon the rule of law it embodied. The extent of the reliance by law enforcement authorities on old standards is one criteria to consider in determining whether a new rule of law will be retroactive. Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The record here proves that at the time of trial the Government argued that Washington v. United States, *supra*, had considered "the admission of the transcript of the prior hearing and whether it was proper" and had found "no error." (Tr. 210) In fact, that was pretty much hornbook law at that time in federal courts. *See* 3 F. Wharton, Criminal Evidence § 735 at p. 55 (12th ed. 1955):

"Testimony given by the defendant at a hearing on his motion to suppress evidence has been admitted in evidence against him at his prosecution."

Citing Heller v. United States, 57 F.2d 627 (7th Cir.), cert. denied, 286 U.S. 567, 52 S.Ct. 647, 76 L.Ed. 1298 (1932); Vaught v. United States, 7 F.2d 370 (9th Cir. 1925); United States v. Lindsly, 7 F.2d 247, 255 (E.D.La.1925), rev'd on other grounds, 12 F.2d 771 (5th Cir. 1926); *and see* State v. Williams, 69 Ohio App. 361, 41 N.E. 717, appeal dis-

missed, 139 Ohio St. 172, 38 N.E.2d 410 (1941); Bell v. State, 94 Tex.Cr.R. 266, 250 S.W. 177 (1923), appeal dismissed, 266 U.S. 640, 45 S.Ct. 483, 69 L.Ed. 483 (1924). 3 J. Wigmore, Evidence § 345 (3d ed. 1940) is not to the contrary. It only states that a judge should hear evidence on voluntariness of a confession out of the presence of the jury. Such reference is inapposite here. Had the *Washington* panel in the Court of Appeals thought that the issue was not well settled, they would not have decided to dispose of the case by a perfunctory order. And while the Supreme Court's denial of certiorari in *Washington*, 354 U.S. 914, 77 S.Ct. 1295, 1 L.Ed.2d 1427 (1957), may be without precedential value, it is not without some significance. It certainly shows that the Supreme Court in 1957 was not overly eager to reverse the old rule of law. That they waited until 1968 to do so in *Simmons* is further indicative of the 1957 climate. The briefs to the Supreme Court in *Washington* argue the admissibility of incriminating testimony given by Washington at his pretrial hearing to suppress evidence.

7. The comment of the dissent in footnote 17 re possible "foreshadowing" by *Wright* completely misses the point. Our decision here merely holds that this case, since it was completely tried and affirmed on May 14, 1957, over five months *before Wright* (decided October 30, 1957), was not in any way to be governed by that decision or by *Bailey* (1967) or *Simmons* (1968). Obviously a case fully decided *before Wright* would not be within the "foreshadow" of any rule of law *subsequently* announced by *Wright*. To apply *Wright* to this case would be "backshadowing," giving *Wright* an *ex post facto* application. Also since our decision does not involve any alleged foreshadowing of *Wright*, we do not consider the limits to which *Wright* is to be applied. Our opin-

Therefore we conclude that the trial court was fully justified in relying on the then existing rule that statements of the defendant made at the suppression hearing were admissible against him as affirmative evidence at trial.

### III

Finally, we consider the impact of the retroactive application of the rule upon the administration of justice. Upon this issue appellant contends that the Government has the burden of demonstrating that the administration of justice would suffer if *Simmons* and *Bailey* were applied retroactively.

In this respect it is noted that if the holding were to be applied retroactively all past criminal cases in which the admissibility of physical evidence was an issue because it had been seized in a search would fall into two groups. First, would be those cases where the prisoner had not moved to suppress the evidence. In these cases he would contend he had been prejudiced because he had been forced to waive his Fourth Amendment rights, which would have permitted him to attack the unconstitutional search and seizure, so that he could at trial assert his Fifth Amendment rights against self-incrimination. Secondly, would be those cases where the prisoner had moved to suppress the evidence, had testified and his suppression testimony had been admitted affirmatively against him at his trial. In such cases he would contend that he had been prejudiced because he had been forced to waive his Fifth

Amendment rights against self-incrimination in order to assert his Fourth Amendment rights against an unconstitutional search and seizure. Thus, virtually, every case in which physical evidence had been seized and introduced at trial would be opened up for a new trial on collateral attack if *Simmons* and *Bailey* were applied retroactively despite the fact that the claim of prejudice did not go to the question of guilt or innocence. If new trials resulted, the passage of time would make it difficult if not impossible to reconstruct the cases. Time would have wrought havoc on the witnesses and the evidence. Many witnesses would be lost, some would have forgotten the facts or suffered some diminution of memory and others would have died. At best, their evidence would be stale. Physical evidence would in most cases have been destroyed or released. In such circumstances we find that the administration of justice would suffer materially.[8]

■ After full consideration of the applicable standards, we decide that the exigencies of the situation require that *Simmons* and *Bailey* should not be applied retroactively.

Affirmed.

BAZELON, Chief Judge (dissenting):

Contrary to the majority in this case, I believe that none of those factors which the Supreme Court has instructed us to consider as bearing upon the question of retroactivity[1] can properly lead to the conclusion that the rule of *Simmons*[2] and

ion only decides the issues raised in this case.

8. The dissenting opinion fails to consider the total impact that retroactive application would have. We cannot consider that the number of past cases involving this point are limited to those cases where the issue reached the Court of Appeals, because the admissibility of such testimony was so well accepted as being within proper rules of evidence that the issue was only raised on rare occasions.

1. The criteria guiding resolution of the question [of retroactivity] implicate (a)

the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.
Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 11 L.Ed.2d 1199 (1967), quoted in Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L. Ed.2d 248 (1969).

2. Simmons v. United States, 390 U.S. 377, 389–394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

*Bailey* [3] does not apply to the present case. Accordingly, I dissent.[4]

1. *The purpose of the rule.* *Simmons* and *Bailey* make clear that testimony given by a criminal defendant to establish standing to challenge the admissibility of evidence may not later be used against him at trial. Such a rule, as applied to trials already concluded, may protect two classes of defendants. The first class consists of those, such as the appellant here, who sacrificed their Fifth Amendment right to silence in order to present their Fourth Amendment claim. The second class consists of those who, to preserve their Fifth Amendment rights, did not so testify and therefore lost their Fourth Amendment claims.

Whatever may be the case with the latter class of defendants—a question not presented by this record—appellant and persons similarly situated have foregone their Fifth Amendment right to silence in order to pursue their Fourth Amendment claim. As to these persons, therefore, the purpose of the *Simmons* rule is to prevent the extortion of testimony from defendants who wish to remain silent.[5] Coerced, self-incriminating testimony is excluded from trials not simply for reasons relating to the integrity of the judicial system, but also because its accuracy is suspect. Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 53, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).[6] The majority's quotations from Tehan v. United States ex rel. Shott [7] are not to the contrary. For the Supreme Court in *Tehan* was dealing with the converse of the present situation: no testimony had been compelled, and the point in question was why comment upon a defendant's *failure* to testify was forbidden by the Fifth Amendment.[8] The Court did not purport to examine the rationale for the privilege in situations not before it: it discussed the matter only "[i]nsofar as these 'purposes' of the Fifth Amendment privilege against compulsory self-incrimination bear on the question before us in the present case." [9] Consequently, I conclude that the rule of *Simmons* and *Bailey*, as applied to the present class of cases, is one that serves to protect the integrity of the fact-finding process.[10] Ac-

3. Bailey v. United States, 128 U.S.App. D.C. 354, 359–360, 389 F.2d 305, 310–311 (1967).

4. I express no opinion on the question whether the error in appellant's trial could properly be considered harmless.

5. *See* 390 U.S. at 393–394, 88 S.Ct. 967; *cf.* 3 J. Wigmore, Evidence 345 (3d ed. 1940).

6. The majority opinion suggests that a contrary conclusion may be implied from the fact that this court in *Bailey* applied the harmless error doctrine of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), to the tainted conviction. *Supra*, pp. 718–720. But Harrington v. California, 395 U.S. 250, 252–254, 89 S.Ct. 1726, 23 L.Ed.2d 824 (1969), applied *Chapman* to a violation of the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Of course, *Bruton* has been retroactively applied because "the terror [there] 'went to the basis of fair hearing and trial * * *.'" Roberts v. Russell, 392 U.S. 293, 294, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100 (1968).

7. 382 U.S. 406, 414–416, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

8. *See id.* at 413–414, 86 S.Ct. 459.

9. *Id.* at 415, 86 S.Ct. at 464. *See also id.* at 414–415, 86 S.Ct. at 464 n. 12:
   [The values represented by the privilege against self-incrimination] were further catalogued in Mr. Justice Goldberg's opinion for the Court in Murphy v. Waterfront Comm'n, 378 U.S. 52 [84 S.Ct. 1594, 12 L.Ed.2d 678] * * * : "The privilege against self-incrimination * * * reflects [*inter alia*] our distrust of self-deprecatory statements; and our realization that the privilege, while sometimes 'a shelter to the guilty,' is often 'a protection to the innocent.' Quinn v. United States, 349 U.S. 155, 162 [75 S.Ct. 668, 673, 99 L.Ed. 964]." 378 U.S., at 55 [84 S.Ct., at 1597].

10. Another factor may be relevant here. Mere compulsion to testify at trial, *e. g.*, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), is compulsion only to say something, but not necessarily to say something incriminating. But where a defendant is compelled

cordingly, the purpose of the rule points toward retroactive application.

2. *Reliance on prior standards.* The trial court here relied on Washington v. United States.[11] The entire opinion in that case is as follows:

> This appeal is from a conviction of bribery (three counts). We find no error.
>
> Affirmed.

As the majority opinion admits,[12] any reliance that may be placed on this opinion must come from an examination of the briefs in the case. I am dubious about the proposition that an affirmance by order implies approval of any particular point argued in the brief of the prevailing party.[13] Even if this is so, it is hard to see how reliance could be placed on *Washington* after our *en banc* decision, later the same year, in Wright v. United States.[14] *Wright* held that a defendant could "challenge the voluntariness of his confession outside the jury's presence without waiving his privilege against self-incrimination,"[15] and the court in *Bailey*—the retroactivity of which we consider today—could see "no sound reason why the rule should be different where the defendant challenges the admissibility of non-testimonial evidence at the hearing on his motion to suppress."[16] In short, the court in *Bailey* found the question not only foreshadowed but disposed of by citation of *Wright* and a section of Wigmore on Evidence.[17] In these circumstances, I cannot give substantial weight to a claim of reliance on *Washington*.[18]

3. *The effect of retroactive application upon the administration of justice.* The majority concludes that "virtually every case in which physical evidence had been seized and introduced at trial would be opened up for a new trial on collateral attack if *Simmons* and *Bailey* were applied retroactively" in this case.[19] I do

---

to testify in order to obtain standing to pursue a Fourth Amendment claim, the pressure—as in the case of a coerced extrajudicial confession—is not merely to say something, but to say something incriminating.

11. 100 U.S.App.D.C. 99, 243 F.2d 43 (1957).

12. See note 6 of the majority opinion, *supra.* I fail to see how the majority can find significance in the Supreme Court's denial of certiorari in *Washington* in view of the fact that such denials are entirely without precedential value. Brown v. Allen, 344 U.S. 443, 489–497, 73 S.Ct. 397, 97 L.Ed. 469 (1953) ; Wade v. Mayo, 334 U.S. 672, 680, 68 S.Ct. 1270, 92 L. Ed. 1647 (1948) ; United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361 (1923) ; *see* Maryland v. Baltimore Radio Show, 338 U.S. 912, 917–920, 70 S.Ct. 252, 94 L.Ed. 562 (1950) (opinion of Mr. Justice Frankfurter).

13. *Cf.* Bumiller v. Walker, 95 Ohio St. 344, 116 N.E. 797, 800 (1917).

14. 102 U.S.App.D.C. 36, 250 F.2d 4 (1957).

15. *Id.* at 45, 250 F.2d at 13. Two of the three judges on the *Washington* panel dissented, but did not reach the point at issue here. The third of the judges on the *Washington* panel concurred only in the result in *Wright.*

16. Bailey v. United States, 128 U.S.App. D.C. 354, 359, 389 F.2d 305, 310 (1967).

17. 3 J. Wigmore, Evidence 345 (3 ed. 1940), the identical passage relied upon in *Wright.* The court in *Bailey* also relied upon Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), in distinguishing contrary cases from other circuits.

The majority refuses to consider any possible foreshadowing effect of *Wright* because it was decided after the trial in the instant case. See note 7 of the majority opinion, *supra.* Presumably this means that the holding of the majority opinion is limited to trials that took place before the decision in *Wright* on October 30, 1957.

18. Although the holding in *Bailey* was of course directly contrary to that asserted for *Washington*, the *Bailey* court did not seem to consider that *Washington* was of sufficient precedential value to warrant even mention in the opinion. Finally, I am dubious about the majority's assertion that the practice followed in *Washington* was hornbook law in the federal courts— at lease in this circuit—at the time. Certainly the passage from Wigmore on Evidence cited in note 17 *supra* points in a contrary direction.

19. See p. 722, *supra.*

not believe the premise will support the conclusion. Of course, we are not here concerned with cases in which the defendant did *not* testify at the suppression hearing [20]—or, for that matter, with cases in which the defendant did so testify but in which his testimony was not used against him.[21] We are concerned only with cases such as the present one in which (a) the defendant testified at the suppression hearing, (b) his testimony was incriminating, and (c) it was later used against him. Although the government has presented no informa- regarding the frequency with which these factors would all occur,[22] it seems to me that the number of cases that would actually be affected by retroactive application of *Simmons* and *Bailey*—at least in this circuit [23]—would be vanishingly small. Washington v. United States [24] appears to be the only case in this jurisdiction prior to *Bailey* in which the issue has ever even appeared. One case strikes me as insufficient grounds upon which to posit an overwhelming impact upon the administration of justice.

In sum, I believe that the purpose of the rule of *Simmons* and *Bailey*, sc far as it concerns persons who have been compelled to testify to present their Fourth Amendment claims, bears a substantial relationship to the accuracy of the fact-finding process at trial. I believe that *Bailey* itself was clearly foreshadowed if not predetermined by our *en banc* decision in Wright v. United States [25] in 1957. Finally, I can see virtually no impact whatsoever on the administration of justice stemming from retroactive appli-

cation of the rule in the present circumstances. Accordingly, I would reach the question whether introduction of appellant's statements at trial was harmless error; and if not, I would reverse the judgment below and order the convictions vacated.

20. It is hard to see how such defendants would benefit from *Simmons* and *Bailey* in any event. For those persons who lost their Fourth Amendment claim in order to protect their Fifth Amendment rights may now litigate their Fourth Amendment claim on collateral attack regardless of what we decide today. Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969) ; Townsend v. Sain, 372 U.S. 293, 313, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

21. As to such persons, the retroactivity *vel non* of *Simmons* and *Bailey* would presumably be irrelevant.

22. *See* Mordecai v. United States, 137 U.S. App.D.C. 198, 203, 421 F.2d 1133, 1138 (1969) (opinion of Bazelon, C. J.).

23. Presumably the contrary state of the law in other circuits is not relevant to a decision on the retroactivity of *Bailey*, whatever impact it may have regarding the retroactivity of *Simmons*.

